JOHN P. WILSON *v.* GEORGE M. FISHER.

If the purchaser of a horse buys it solely by reason of a false representation of its soundness made to him by the vendor, and which he knew to be false when he made it, the vendor cannot maintain an action for the price of it, for the fraudulent representation would vitiate the sale in that case provided the purchaser gives him notice within a reasonable time after discovering the fraud that he will not complete the bargain by paying the price, and returns or offers to return it in rescission of the contract of purchase.

But if the purchaser soon after becomes aware of the fact that the vendor's represention of its soundness is false, yet takes it on his subsequent admission and further representation that it was a little lame, but put on the road it would soon drive off, and which representation the vendor also knew to be false, still he could not maintain the action for the price of it if the purchaser within a reasonable time after discovering that his second representation was also false, notifies him that he will not pay the price, and returns or offers to return the horse to him and rescind the contract of sale.

As the parties resided in the same county and within fifteen miles of each other, that should have been done by the purchaser the day he discovered the fraud, or at least the next day if possible, to have been done within a reasonable time or as soon as the circumstances of the case would admit.

ASSUMPSIT for the price of a horse sold by the plaintiff to the defendant for ninety dollars. The defense relied on was under the plea of fraud and covin. The sale was admitted, and that the defendant promised the plaintiff on the day of the sale that he would give him his judgment note for the amount. The sale was at a public vendue of the plaintiff's property, who had that day broken up housekeeping, and while he was up for sale the defendant inquired of the plaintiff if he was a sound and gentle horse, for if he was not he did not want him at any price, and the plaintiff replied that the horse was perfectly sound and gentle and without a blemish. The defendant then bid for him and after a time he was struck off to him at ninety dollars. The defendant having learnt soon after the sale that he was a little lame, asked the plaintiff about it, when he told him he was a little lame but put him on the road and it would soon drive off. He drove home with him the same day led behind his horse and carriage, and discovered after driving about two miles that he was lame when he trotted; and the next day when hitched to his carriage he would not go, nor would he go when he was then tried under the saddle. The horse was spavined, and the person who sold him to the plaintiff testified that he informed him at the time that he was not a sound horse, and that he was not selling him as a sound horse. Four days afterward the brother of the plaintiff by his request called on the defendant to get his note for the price, when he told him what he had discovered with regard to him, that the horse did not suit him, and that he was not going to pay that price for him,

and which he soon after told his brother. The plaintiff in the meanwhile had been without any known abode, but learning that he was to be at his father's house on the following day the defendant took the horse there to return him to him and to cancel the bargain, but not finding him there he left him with his father for him, and had not had possession of him since.

*Walcott*, for the plaintiff: It was not every false representation, even when made with a knowledge of its falsity, by the vendor to the vendee of an article of trade that will vitiate a sale or invalidate a contract, but it must be a material misrepresentation by which the purchaser has been actually deceived and defrauded in the transaction, and on which he relied in making the purchase; in this case, however, the plaintiff immediately after the sale informed the defendant that the horse was a little lame, which was utterly inconsistent with what he had before told him, and yet he took the horse away after that, and no one had ever heard him complain that he had been deceived by that misrepresentation. 2 *Pars. on Contr.* 780, 781, 782; 3 *Houst.* 385. But if he seeks to rescind the contract on such a ground he must offer to do so as soon as the fraud is discovered, and yet five days were permitted to elapse before he even took a step to do that, *Story on Contr.*, sec. 497, or as soon as the circumstances would admit. 5 *M. & W.* 83; 1 *Ad. & El.* 40.

*Massey*, for the defendant: Where a matter of fact of immediate importance is peculiarly within the knowledge of the party misstating or misrepresenting it, the fraud involved in it will vitiate the contract. 9 *Ben Monroe* 506; 15 *Ben Monroe* 508; 8 *Hare* 282. The defect was not apparent but latent in the horse as he stood when the defendant bid him off at the vendue, but the plaintiff knew of it and falsely and fraudulently deceived the defendant in regard to it, and that vitiated the sale of the horse to him. 2 *Houst.* 524. As the plaintiff was absolutely without any place of abode during the five days which followed the day of sale, and the defendant took the horse to his father's at the end of that brief interval just as soon as he had learnt that he was to be there, and not finding him there left the horse

in the possession of his father for him, and relinquished from that time any right or claim to him, he did all that it was possible for him to do under the circumstances to rescind the contract of sale, and did, in fact, thereby rescind it.

*Walcott* replied.

*The Court, Comegys, C. J., charged the jury,* that if they were satisfied from the evidence that the defendant bought the horse solely by reason of a false representation of his soundness made to him by the plaintiff, and which the plaintiff knew to be false when he made it, he was not entitled to recover in the action, for the fraudulent representation would vitiate the sale in that case provided the defendant gave notice to the plaintiff within a reasonable time after discovering the fraud that he would not complete the bargain by paying the price bid for him, and returned the horse or offered to return it to him within a reasonable time afterward in rescission of the contract of purchase. But if the defendant before he took the horse away from the place of sale became aware of the fact that the plaintiff's representation of his soundness was false, and yet took him away and home with him upon his subsequent admission and further representation that he "was a little lame, but put him on the road and it would soon drive off," and the jury were satisfied from the evidence that that representation was also false, and that the plaintiff knew it to be false when he made it, and that the horse was permanently lame and spavined, not being perceptible as it then stood before the persons attending the sale, and concealed his knowledge of that fact from the defendant, still the plaintiff was not entitled to recover in the action if the defendant within a reasonable time after discovering that the other representation was also false notified the plaintiff that he would not complete the bargain and returned the horse to the plaintiff, or offered to return it to him and rescind the sale.

What will constitute a reasonable time within which the offer to rescind a contract shall be made was a question for the court; whether such a reasonable time had elapsed before it was made in any case arising was a question for the jury. And that

would depend to some extent on the circumstances of the case, but the general rule of law on the subject is that it must be done when allowable without undue delay, and with as much promptitude and dispatch as the circumstances of the case will admit ; and as in this case the parties resided in the same county and within fifteen miles of each other, the defendant to have done it within a reasonable time should have returned the horse or offered to return it to the plaintiff on the ground of the fraud the same day he discovered it, or the next day at least, if possible, and he should within that time have taken it back to the plaintiff or to his premises and there left it, and that obligation was not discharged by a delivery elsewhere unless the plaintiff was there or resided there at the time. But even the fact that the plaintiff had just broken up housekeeping and had then no known place of residence anywhere could not have warranted the defendant under such circumstances in taking the horse to the premises of the father of the defendant and leaving him there in his absence, because it could not suffice for the purpose for which it was suggested by the counsel for the defendant, for that might have been done but was not done within a reasonable time after he had discovered the fraud, nor, in fact, until the fifth day after it.

> The defendant had a verdict.